1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

JAMES R.,

9

Plaintiff,

10

v.

11

COMMISSIONER OF SOCIAL SECURITY,

12

Defendant.

Case No. C20-5632-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

13
14

Plaintiff seeks review of the partial denial of his application for Disability Insurance

15

Benefits.  Having considered the ALJ's decision, the administrative record ("AR"), and all

16

memoranda of record, the Court **REVERSES** the Commissioner's final decision and

17

**REMANDS** the matter for further administrative proceedings before a different ALJ under

18

sentence four of 42 U.S.C. § 405(g).

19

**BACKGROUND**

20

Plaintiff was born in 1969, has a college degree, and previously worked as a fiscal

21

analyst, juvenile rehabilitation counselor, juvenile security officer, and U.S. Coast Guard

22

Reserves port security specialist.  AR 258.  Plaintiff stopped working in July 2015.  AR 45.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

In September 2015, Plaintiff applied for benefits, alleging disability onset on August 1, 2015.  AR 235-36.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 131-33, 135-38.

After ALJ Joanne Dantonio conducted hearings in September 2016 and July 2017 (AR 36-106), she issued a decision finding Plaintiff not disabled.  AR 17-29.  The Appeals Council denied Plaintiff's request for review (AR 1-6), but the U.S. District Court for the Western District of Washington granted the parties' stipulation to reverse the ALJ's decision and remand for further administrative proceedings.  AR 3604-05.

On remand, ALJ Dantonio held another hearing in November 2019 (AR 3533-76), and subsequently issued another decision finding Plaintiff not disabled before July 29, 2019, but disabled thereafter.  AR 3506-24.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

**Step two**:  Plaintiff has had the following severe impairments since the alleged onset date: neck strain, left shoulder rotator cuff strain, migraines, tension headaches, and vestibular disorder/Meniere's disease.

**Step three**:  Since the alleged onset date, these impairments have not met or equaled the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC")**:  Since the alleged onset date, Plaintiff could perform sedentary work with additional limitations: he could never climb ladders, ropes, or scaffolds.  He could less than occasionally or seldom balance while using a cane.  He could occasionally crawl.  He could frequently stoop, kneel, and crouch.  He could frequently climb ramps or stairs with the use of handrails.  He could never drive for more than 30 minutes as part of his job duties.  He could work without loud background noise when speaking to others.  He could type for up to three hours per day.  He could frequently reach, handle, and finger.  He could occasionally use a computer monitor.  He

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

1
2

could have no more than occasional exposure to hazards such as unprotected heights and dangerous machinery. He could never balance for avoidance of hazards.

3

**Step four**: Since the alleged onset date, Plaintiff could not perform past relevant work.

4
5
6

**Step five**: Prior to July 27, 2019, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and he was therefore not disabled at that time. On July 27, 2019, Plaintiff became no longer able to perform any jobs that exist in significant numbers in the national economy, and he therefore became disabled on that date.

7

AR 3506-24.

8

Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 1.

9

**LEGAL STANDARDS**

10

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

11

security benefits when the ALJ's findings are based on harmful legal error or not supported by

12

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

13

2005). As a general principle, an ALJ's error may be deemed harmless where it is

14

"inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104,

15

1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to

16

determine whether the error alters the outcome of the case." *Id*.

17

Substantial evidence is "more than a mere scintilla. It means - and means only - such

18

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

19

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

20

747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving

21

conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v.*

22

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record

23

as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

1   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

2   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

3   must be upheld.  *Id.*

### DISCUSSION

5           Plaintiff argues the ALJ erred in assessing his testimony and the medical evidence, and

6   that these errors led to errors in the ALJ's RFC assessment and step-five findings.  Dkt. 33 at 2,

7   16-17.  Plaintiff also argues that if he does not prevail on any of those arguments, his case should

8   also be remanded due to an Appointments Clause violation, under *Lucia v. S.E.C.*, 138 S. Ct.

9   2044 (2018).  The Commissioner argues the ALJ's decision is free of harmful legal error,

10  supported by substantial evidence, and should be affirmed.

### A.        The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony

12          The ALJ summarized Plaintiff's allegations (AR 3514) and explained that she discounted

13  them because (1) the objective medical evidence does not corroborate Plaintiff's allegations and

14  instead shows many normal findings; (2) Plaintiff's pain is effectively managed with

15  treatment/medication, and he received limited treatment for some of his conditions; (3)

16  Plaintiff's longstanding symptoms did not prevent him from working in the past; (4) multiple

17  examiners found no support for Plaintiff's hand/wrist complaints, which suggests he inflated

18  those complaints; and (5) Plaintiff's demonstrated abilities and activities are inconsistent with his

19  allegations.  AR 3514-19.  Plaintiff contends that the ALJ failed to provide clear and convincing

20  reason to discount her testimony[3], as required in the Ninth Circuit.  *See Burrell v. Colvin*, 775

21  F.3d 1133, 1136-37 (9th Cir. 2014).

22

23  _____

[3] Plaintiff also provides a lengthy summary of his hearing testimony in his opening brief.  Dkt. 33 at 13-16.  This section is not linked to any particular error in the ALJ's decision and need not be addressed further.

Plaintiff first argues that a lack of objective support for his allegations cannot alone support the ALJ's discounting of her testimony. Dkt. 33 at 11-12. But as detailed in the previous paragraph, the ALJ listed other reasons as well, such as improvement with treatment, Plaintiff's work history, and daily activities. Plaintiff has not shown that the ALJ erred in considering the extent to which the objective evidence corroborated his allegations, along with other reasons. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff next argues that even if, as the ALJ found, he experienced some improvement in his symptoms or treatment, or received only minimal treatment for certain conditions, that does not undermine his allegations of symptoms that nonetheless persisted. Dkt. 33 at 12. Plaintiff misses the ALJ's point: the ALJ cited evidence that some of Plaintiff's conditions improved with conservative treatment and that he received minimal treatment for others (AR 3518), which reasonably undermines his allegations of disabling limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

1   Plaintiff has not shown that the ALJ erred in considering his improvement with treatment for

2   some conditions, as well as his minimal treatment for others, when assessing his testimony.

3           Plaintiff also challenges the ALJ's findings regarding his ability to work with some of the

4   same symptoms he now claims are disabling: Plaintiff argues that his ability to work before his

5   symptoms worsened does not show that he could work after his alleged onset date.  Dkt. 33 at

6   12-13.  This may be true, but the ALJ noted that Plaintiff alleged that he stopped working due to

7   his hand and wrist pain (AR 3518), and yet these pain complaints were not corroborated by any

8   objective findings.  AR 3518 (citing AR 447, 544, 547, 602, 643, 645).  Plaintiff contends that

9   his thoracic outlet syndrome, headaches, and migraines could be reasonably expected to cause

10  his hand and wrist pain (Dkt. 33 at 12), but, as discussed *infra*, Plaintiff has not shown that the

11  ALJ erred in finding that thoracic outlet syndrome was not a medically determinable impairment

12  (AR 3512), and Plaintiff has cited no evidence linking his hand/wrist pain with his headaches or

13  migraines.  Because Plaintiff has not shown that the ALJ erred in finding that Plaintiff's work

14  history undermined his allegations, the Court declines to disturb this reasoning.  *See*, *e.g.*, *Drouin*

15  *v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a

16  fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the

17  vocational counselor testified that she is qualified for thousands of less strenuous jobs.").

18          Plaintiff also goes on to argue that the ALJ erred in finding an inconsistency between

19  Plaintiff's 2017 hearing testimony that since 2010 he had missed two days of work per month

20  due to his headaches (AR 56) and a 2010 statement that he rarely missed work for his headaches

21  (AR 711).  Dkt. 33 at 13.  According to Plaintiff, these statements are entirely consistent because

22  he did not start missing work until some point around 2010, which could have been after the

23  statement was written.  *Id*.  But earlier in the hearing Plaintiff testified that he began having

migraine headaches twice per month in 2006 and they increased in frequency and length in 2010. AR 54-56.  Although Plaintiff appears to present an alternate reading of the evidence, the Court finds that the ALJ's interpretation of Plaintiff's statements is reasonable: his 2017 hearing testimony regarding his history and experience of migraines is reasonably inconsistent with the history and experience of migraines he reported in 2010.  The ALJ did not err in finding that this inconsistency undermined the value of Plaintiff's self-reporting.  *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent reporting of symptoms, when assessing a claimant's allegations).

Lastly, Plaintiff argues that the ALJ erred in citing his activities as a basis for discounting his allegations (Dkt. 33 at 13), and the Court agrees that the ALJ failed to explain how the activities cited (AR 3519) were either inconsistent with his allegations or demonstrated transferable work skills.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").  This error is harmless, however, in light of the ALJ's other valid reasons to discount Plaintiff's allegations.

Because Plaintiff has failed to establish error in the ALJ's assessment of his testimony, the Court finds no basis to remand for reconsideration of that evidence, but because this case must be remanded on other grounds, as explained *infra*, the ALJ may reconsider Plaintiff's testimony to the extent necessary on remand.

1          **B.      The ALJ Did Not Err in Assessing the Medical Opinion Evidence**[4]

2          Plaintiff challenges the ALJ's assessment of opinions rendered by Lauren W. Fisher,

3   M.D.; Laura Kaufman, M.D., Ph.D.; and Brandy Thomas, M.D.  Plaintiff also argues that the

4   ALJ erred in crediting the certain examining opinions as well as the State agency opinions, and

5   that the ALJ erred in discounting the disability rating rendered by the U.S. Department of

6   Veterans' Affairs ("the VA").  The Court will address each disputed opinion in turn.[5]

7                   *1.     Legal Standards*[6]

8          Where not contradicted by another doctor, a treating or examining doctor's opinion may

9   be rejected only for "'clear and convincing'" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

10  1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a

11  treating or examining doctor's opinion may not be rejected without "'specific and legitimate

12  reasons' supported by substantial evidence in the record for so doing."  *Id.* at 830-31 (quoting

13  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

14                  *2.     Dr. Fisher*

15         In June 2016, Dr. Fisher documented *inter alia* a positive sign for thoracic outlet

16  syndrome, but noted that the positive sign was not accompanied by "diminished pulses."  AR

17  663-64.  Dr. Fisher nonetheless listed this condition among Plaintiff's diagnoses.  *Id.*  Plaintiff

18

19  [4] Plaintiff also folds a step-two challenge into this section, but has presented no more than conclusory
    arguments that the evidence fails to support the ALJ's findings, without citing any evidence.  Dkt. 33 at 3-
20  4.  To the extent that his arguments are fleshed out in the sections regarding specific opinions, the Court
    will address the arguments in the context of the opinions.

21  [5] Plaintiff also devotes pages of his opening brief to a summary of various medical findings, without
    linking that evidence to an error in the ALJ's decision.  Dkt. 33 at 6-10.  The Court need not address this
22  evidence as it does not advance Plaintiff's arguments.

23  [6] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. §
    404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

1    argues that the ALJ failed to acknowledge this finding and erroneously concluded that thoracic

2    outlet syndrome had not been conclusively diagnosed.

3           But the ALJ did acknowledge this finding (AR 3512 (citing AR 662-64)), and found that

4    the record also contained numerous tests ruling out thoracic outlet syndrome.  *See* AR 3512.

5    Plaintiff has not shown that the ALJ erred interpreting Dr. Fisher's treatment note in light of the

6    longitudinal record, particularly because Dr. Fisher's treatment note does not describe any

7    limitations caused by the thoracic outlet syndrome that would indicate it is a severe impairment,

8    even assuming it is medically determinable.  Accordingly, Plaintiff has not established harmful

9    error in the ALJ's assessment of Dr. Fisher's note and/or the step-two findings as to thoracic

10   outlet syndrome.

11                  *3.      Dr. Kaufman*

12          In September 2015, Dr. Kaufman opined that Plaintiff should limit his time on the

13   computer and limit his hours at work.  AR 446-47.  She emphasized that Plaintiff had no

14   objective findings that would support his inability to work, but that Plaintiff reported increased

15   pain when typing.  AR 447.  In January 2015, after speaking with Plaintiff on the phone about

16   his request for "restrictions to turn into work to put him back on disability retirement[,]" Dr.

17   Kaufman "[a]sked [him] repeatedly what restrictions he wanted" and then wrote a letter

18   indicating restrictions as to hand/wrist use.  AR 542-43.  Dr. Thomas concurred with these

19   restrictions the following month, opining that Plaintiff could use a computer for one hour per

20   day, handwrite for five minutes at a time several times per day, and could use his fingers for a

21   few minutes at a time every hour.  AR 564.

22          The ALJ did not explicitly weigh the limitations mentioned in Dr. Kaufman's treatment

23   notes, but did assign little weight to Dr. Thomas's opinion affirming the identical hand/wrist

limitations as found in Dr. Kaufman's January 2016 treatment note.  AR 3521.  Any error in the ALJ's failure to explicitly tie these limitations to Dr. Kaufman is therefore harmless, given that the ALJ addressed the identical limitations in the context of Dr. Thomas's opinion.

The ALJ discounted Dr. Thomas's February 2016 opinion, finding the hand restrictions she identified to be inconsistent with the objective medical evidence showing no hand/wrist impairment as well as the many normal functional findings in the record.  AR 3521.  Plaintiff argues that the ALJ erred in discounting these limitations because they are corroborated by the clinical findings of Drs. Fisher and Thomas (Dkt. 33 at 6), although he identifies primarily his own self-reported symptoms as support, rather than objective clinical findings.  The ALJ found that the many normal functional findings in the record (including the treatment notes of Drs. Kaufman and Thomas) as to Plaintiff's arms and hands — such as his full range of motion, strength, sensation, and reflexes in his arms (AR 3521) — reasonably contradicted the limitations identified by Drs. Kaufman and Thomas, and Plaintiff has not shown that the ALJ erred in so concluding.  The ALJ properly discounted the hand/wrist limitations identified by Drs. Kaufman and Thomas as inconsistent with and unsupported by the record.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

4.     *Independent Medical Examinations*

Plaintiff also argues that the ALJ erred in crediting certain independent medical examination reports (Dkt. 33 at 6 (referencing AR 3519-21)), essentially asking the Court to reweigh the evidence.  He cannot show error flowing from the ALJ's crediting of these opinions,

and the Court declines to reweigh the evidence in the manner requested by Plaintiff. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ must provide reasons for rejecting a medical opinion, but not for accepting and interpreting one).

### 5.   *The VA Rating*

The VA rated Plaintiff 100% disabled as of January 13, 2016, based on his service-connected impairments.  AR 1122-26.  The ALJ considered that rating and explained that she discounted it based on the differences in the eligibility criteria for VA benefits and Social Security benefits, as well as the fact that Plaintiff received minimal treatment for his vestibular condition that the VA found to be 100% disabling.  AR 3521-22.

Plaintiff states in conclusory fashion that the ALJ failed to provide any legally sufficient reasons to discount the VA rating (Dkt. 33 at 10), but fails to address the reasons the ALJ provided.  Because Plaintiff has not identified any particular error in the ALJ's reasoning with regard to the VA rating, the Court declines to disturb this portion of the ALJ's decision.

### 6.   *State Agency Consultants*

Plaintiff argues that the ALJ erred in crediting the State agency opinions because these were rendered years before the ALJ's decision and thus the consultants did not consider all of the evidence before the ALJ.  Dkt. 33 at 10.  The ALJ explicitly considered these opinions in light of the record, however, and Plaintiff has not shown that the opinions were contradicted by all of the remaining evidence in the record. *See* AR 3520.  Thus, Plaintiff has failed to establish error in the ALJ's assessment of the State agency opinions. *See Andrews*, 53 F.3d at 1041.

Because Plaintiff has failed to establish error in the ALJ's assessment of the medical evidence, the Court finds no basis to remand for reconsideration of that evidence, but because this case must be remanded on other grounds, as explained *infra*, the ALJ may reconsider the

1    medical evidence to the extent necessary on remand.

2         **C.      The Appointments Clause Violation Requires Remand**

3         Plaintiff argues the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018),

4    compels reversal in this matter.  Specifically, Plaintiff argues the Commissioner ran afoul of

5    *Lucia* by failing to assign his 2019 hearing to a different, properly appointed ALJ.  Dkt. 33 at 18-

6    19; Dkt. 36 at 10.  The Commissioner avers the remedy in *Lucia* is "not warranted" because the

7    same ALJ who rendered the first decision was properly appointed prior to rendering the second

8    decision.  Dkt. 34 at 18-19.

9         The Court is not persuaded that the Commissioner's argument is compatible with *Lucia*.

10   The Supreme Court held in *Lucia* that Securities and Exchange Commission ALJs were

11   "Officers of the United States" under the Constitution and therefore must be appointed in

12   accordance with the Constitution.  *Lucia*, 138 S. Ct. at 5053-54.  The Court found that all

13   decisions issued by ALJs who were not properly appointed must be reversed and remanded, to be

14   heard by a different, properly appointed ALJ.  *Id.* at 2055.

15        Shortly after *Lucia* was decided, the Commissioner issued SSR 19-1p, which set forth a

16   procedure for timely Appointments Clause challenges:

17            When the Appeals Council grants review based on a timely-raised
              Appointments Clause challenge, [Administrative Appeals Judges] who
18            have been appointed by the Acting Commissioner (or whose appointments
              the Acting Commissioner has ratified) will vacate the hearing decision or
19            dismissal. **In cases in which the ALJ made a decision, the Appeals
              Council will conduct a new and independent review of the claims file
20            and either remand the case to an ALJ other than the ALJ who issued
              the decision under review, or issue its own new decision about the claim
21            covering the period before the date of the ALJ's decision**. In its review,
              the Appeals Council will not presume that the prior hearing decision was
22            correct.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12

> The Appeals Council will either **remand the case to a different ALJ**; issue a new, independent decision; or, as appropriate, issue an order dismissing the request for a hearing.
>
> In cases in which the ALJ dismissed a request for a hearing, the Appeals Council will vacate the ALJ's dismissal order. It will then either: (1) Decide whether the request for a hearing should be dismissed, or (2) **remand the case to another ALJ to determine that issue.**

*See* SSR 19-1p, 2019 WL 1324866, at *3 (Mar. 15, 2019) (emphasis added).

*Lucia* identifies two prerequisites to remedying an "adjudication tainted with an appointments violation." 138 S. Ct. at 2055. *First*, a claimant must receive a "new hearing before a properly appointed official." *Id*. (cleaned up). *Second*, "that official" cannot be the same ALJ, "even if he has by now received (or receives sometime in the future) a constitutional appointment." *Id*. "To cure the constitutional error, another ALJ … must hold the new hearing" to which a claimant is entitled. *Id*. Here, only the first condition was met.

The Commissioner does not dispute that ALJ Dantonio was improperly appointed at the time of the 2016-17 hearings. Dkt. 34 at 18. The Commissioner contends, however, ALJ Dantonio's subsequent ratification of appointment, prior to the 2019 hearing, remedied any constitutional defect in the first decision. *Id*. The Commissioner's position is in tension with the *Lucia*'s instruction that an Appointments Clause violation should be remedied by a new hearing and "*another* ALJ … *must* hold the new hearing[.]" *Lucia*, 138 S. Ct. at 2055 (emphases added). Thus, irrespective of her appointment status at the time of the 2019 hearing, ALJ Dantonio's participation in Plaintiff's administrative case continued — rather than cured — the constitutional violation attendant to the first decision. *See id*. ("Judge Elliot has already both heard Lucia's case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before."). Because Plaintiff's 2019 hearing

1    violated *Lucia*'s mandate, it did not, as the Commissioner argues, cure the first decision's

2    constitutional defect.

3            The Court finds that "to cure the constitutional error," the Commissioner's final decision

4    must be reversed and remanded, and "another ALJ … must hold the new hearing." *Id.*; *accord*

5    *Welch v. Comm'r of Social Sec.*, 2021 WL 1884062 (S.D. Ohio May 11, 2021).

6                                         **CONCLUSION**

7            For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

8    this case is **REMANDED** for further administrative proceedings before a different ALJ under

9    sentence four of 42 U.S.C. § 405(g).

10           Dated this 4th day of October, 2021.

11

12

13                                                   _____
                                                     S. KATE VAUGHAN
14                                                   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 14